|   |   |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT TACOMA | |
| KARL (FRAN) CHLARSON,<br><br>                    Plaintiff,<br><br>        v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>                    Defendant. | CASE NO. 2:16-cv-01566 BHS JRC<br><br>REPORT AND RECOMMENDATION<br>ON PLAINTIFF'S COMPLAINT<br><br>NOTING DATE:  August 18, 2017 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. *See* Dkt. 11, 16, 17.

In this matter the ALJ gave little weight to the opinion of examining psychologist Dr. James Czysz, Psy. D. because it lacked a longitudinal perspective and relied heavily on the plaintiff's subjective complaints. *See* AR. 27. After considering and reviewing the record, the Court concludes the ALJ evaluation of Dr. Czysz's opinion was not supported by substantial

evidence in the record and, instead, Dr. Czysz's opinion was based on clinical findings and objective evidence, such as an MSE and WMS-IV.

## BACKGROUND

Plaintiff, KARL (FRAN) CHLARSON, was born in 1990 and was 23 years old on the alleged date of disability onset of March 20, 2013. *See* AR. 170-71, 172-85. Plaintiff completed the tenth grade and has his GED. AR. 48. Plaintiff has some work experience as an online search engine evaluator, stocker, sales associate in a hardware store, restaurant greeter and cook in a fast food restaurant. AR. 211-22. Plaintiff served two years in the National Guard with an unconditional discharge. AR. 49.

According to the ALJ, plaintiff has at least the severe impairments of "bipolar disorder, post-traumatic stress disorder ("PTSD"), borderline personality disorder, and attention-deficit hyperactivity disorder (20 CFR 404.1520(c) and 416.920(c))." AR. 22.

At the time of the hearing, plaintiff was living in subsidized housing above a shelter. AR. 50.

## PROCEDURAL HISTORY

Plaintiff's applications for Disability Insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 82, 83, 106, 107. Plaintiff's requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on November 13, 2014. *See* AR. 35-81. On June 5, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 17-34.

1   On September 15, 2016, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. AR. 1-7. *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in October, 2016. *See* Dkt. 3. Defendant filed the sealed administrative record regarding this matter ("AR.") on January 17, 2017. *See* Dkt. 9.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ gave specific and legitimate reasons for rejecting the opinion of examining Dr. James Czysz, Psy.D.; (2) Whether the ALJ erred when he failed to address plaintiff's listing level weight; and (3) Whether remand is necessary so that the ALJ may consider evidence submitted to the Appeals Council. *See* Dkt. 11, p. 1.

Because this Court concludes that the ALJ did not give specific and legitimate reasons supported substantial evidence to discount Dr. Czysz's opinion, this matter should be remanded for further consideration and the ALJ will be allowed to consider additional evidence.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

(1) **Whether the ALJ gave specific and legitimate reasons for rejecting the opinion of examining doctor James Czysz, Psy.D.**

Plaintiff contends the ALJ erred when evaluating the medical evidence related to an examining doctor. *See* Dkt. 11, pp. 6-11. Defendant contends this medical opinion was properly considered. *See* Dkt. 16, pp. 4-7.

1  When a treating or examining physician's opinion is contradicted, that opinion can only
2  be rejected "for specific and legitimate reasons that are supported by substantial evidence in the
3  record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53
4  F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also*
5  20 C.F.R. §§ 404.1527(a)(2).

6  Dr. James D. Czysz, Psy.D., performed a psychological evaluation of the plaintiff on
7  March 13, 2013. *See* AR. 312-317. As part of the evaluative process, Dr. Czysz completed a
8  mental status exam ("MSE") based upon a clinical interview. *See* AR. 312-13, 316-17. Dr. Czysz
9  diagnosed plaintiff with mood disorder, post-traumatic stress disorder, and borderline personality
10 disorder. *See* AR. 314. He opined that plaintiff had cognitive and social limitations in the ability
11 to perform some basic work activities, finding plaintiff markedly limited in the ability to
12 "understand, remember and persist in tasks by following detailed directions" and to "maintain
13 appropriate behavior in a work setting." *See* AR. 315.

14 The ALJ gave little weight to Dr. Czysz's opinion, providing a number of reasons for not
15 fully crediting his clinical findings. *See* AR. 27. The ALJ opined that Dr. Czysz did not have a
16 longitudinal perspective when rendering his opinion, that the opinion did not properly consider
17 the effect of prescribed medication, and that the opinion relied heavily on claimant's subjective
18 complaints, which did not correlate with objective findings (*see id*.). The ALJ also took issue
19 with the marked cognitive and social limitations indicated by Dr. Czysy on the form, as well as
20 the "check-the-box" format of the diagnosis form itself (*id*.). The Court has considered each of
21 these reasons when reviewing the ALJ's decision.

22 <u>No Longitudinal Perspective</u>

1         The ALJ found the doctor "did not have a longitudinal perspective when he rendered the
2   opinion" because "[u]pon close review of this evaluation, there is no reference to the longitudinal
3   record." AR. 27. The form containing Dr. Czysz's opinion stated "no prior records were
4   available for review" but further along in the record, Dr. Czysz gives a contradictory statement
5   indicating his GAF score *was* based on a review of prior records. *See* AR. 312 and 314
6   respectively.

7         Therefore, the record is internally inconsistent as to whether or not Dr. Czysz reviewed
8   plaintiff's medical records. The ALJ appears to have relied on Dr. Czysz's first notation in the
9   record that "no prior records were available for review," and discarded the subsequent portion of
10  the record wherein Dr. Czysz indicated that his GAF score was based on "the records reviewed."
11  *See id.* The ALJ appears to have found that the indication that Dr. Czysz's GAF score was based
12  on "the records reviewed" was a "careless use of auto text." AR. 27, but does not indicate what
13  aspect of the record he relied on when making this determination. It seems just as likely that the
14  first reference stating that he reviewed prior records could just have easily been based on a use of
15  auto text as the second reference, or there could be an entirely different reason for the
16  discrepancy in the record.

17        The ALJ "has an independent 'duty to fully and fairly develop the record and to assure
18  that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th
19  Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*quoting Brown v.
20  Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))). The ALJ's "duty exists even when the
21  claimant is represented by counsel." *Brown*, *supra*, 713 F.2d at 443 (*citing Driggins v. Harris*,
22  657 F.2d 187, 188 (8th Cir. 1981)).  If a social security claimant is not represented by counsel, as
23  is the case here, it is incumbent on "'the ALJ to scrupulously and conscientiously probe into,
24

inquire of, and explore for all the relevant facts, and be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (per curiam) (*quoting Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). The ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150 (*citing Smolen, supra*, 80 F.3d at 1288 (other citation omitted)).

The ALJ should have developed the record more fully before resolving this ambiguity and assigning little weight to Dr. Czysz's opinion.

Furthermore, not reviewing plaintiff's prior medical records is not a legitimate basis for the failure to credit fully Dr. Czysz's opinion, as Dr. Czysz examined plaintiff and performed a MSE, and opinions from examining doctors generally are given more weight than opinions from doctors who only review medical records. *See Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). Therefore, this Court cannot affirm the ALJ's rejection of Dr. Czysz's opinion on the basis of this finding by the ALJ.

Regarding the remainder of the ALJ's rationale for failing to credit fully Dr. Czysz's opinion, the ALJ improperly valued the significant evidentiary value of an MSE, and instead appears to have provided his own interpretation of the examination results. *See* AR. 27. When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 6

1  Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data
2  may consist of the diagnosis and observations of professional trained in the field of
3  psychopathology. The report of a psychiatrist should not be rejected simply because of the
4  relative imprecision of the psychiatric methodology or the absence of substantial
5  documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting*
6  *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118
7  (7th Cir. 1990) ("judges, including administrative law judges of the Social Security
8  Administration, must be careful not to succumb to the temptation to play doctor. The medical
9  expertise of the Social Security Administration is reflected in regulations; it is not the birthright
10 of the lawyers who apply them. Common sense can mislead; lay intuitions about medical
11 phenomena are often wrong") (internal citations omitted)).

12  Because Dr. Czysz was an examining psychological clinician, the ALJ improperly
13 determined the doctor's observations were incomplete without an accompanying historical
14 record review.

15  Effect of Prescribed Medication

16  The ALJ opined that Dr. Czysz's opinion warranted little weight because it was "issued
17 prior to the claimant restarting her bipolar and ADHD medication and her symptoms improved
18 with medication." AR. 27 (internal reference omitted).  This is a potentially important finding
19 because impairments that can be controlled effectively with medication are not considered
20 disabling. *See Warre v. Commissioner*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding that
21 "[i]mpairments that can be controlled effectively with medication are not disabling for the
22 purpose of determining eligibility for SSI benefits.")

23
24

1        Dr. Czysz's conducted an MSE of plaintiff on March 13, 2013. *See* AR. 312 and 315.

2  The ALJ cited specific facts from the record that, when taken in isolation, support the idea

3  plaintiff was responding positively to prescription medication for bipolar disorder and ADHD.

4  *See* AR. 26. The ALJ found that, "Although the claimant experiences some mental health

5  symptoms, the evidence indicates that her symptoms improve while on medication." AR. 26. The

6  ALJ noted plaintiff being "more attentive, not crying all the time, and having reduced emotional

7  turmoil." *Id.* (ALJ remarking on a September 2013 report). The ALJ pointed out a December

8  2013 report noting the medication "helping a lot," and a January 2014 examination where the

9  plaintiff made "good eye contact," and "did not exhibit psychomotor agitation or retardation." *Id.*

10  However, when more fully explored, the record is less supportive of such a finding, particularly

11  considering the erratic nature of bipolar disorder. S*ee Attmore* v. *Colvin*, 827 F.3d 872, 878 (9th

12  Cir. 2016) (Recognizing that "It is the nature of bipolar disorder that symptoms wax and wane

13  over time.").

14        For example, the ALJ also found, "[claimant] stopped taking her ADHD medication

15  because it reportedly affected her ability to play videogames." AR. 26. The complete statement

16  the ALJ referenced appears in the record as: "Feels it (Lamictal) is clouding her mentation and

17  making it harder for her to play video games at the competitive level that she needs in order to do

18  so semi-professionally which is her goal." AR. 454. Two sentences later, the examining

19  physician noted, under the heading of "Memory Loss:" "Forgetting things she is doing in a video

20  game." *Id*. Perhaps more insightful, the plaintiff later relayed about her medications in general

21  terms: "may or may not want psychic meds, doesn't want to be a zombie." AR. 385 and 423.

22       Although it is often the case that a claimant's failure to comply with prescribed treatment

23  calls into question the severity of the claimant's symptoms, this generally is because such failure

24

suggests that the claimant willfully is failing to submit to medical treatment because he or she wishes to remain disabled and receive benefits, or because he or she is not suffering from that severe of an impairment if not doing everything possible to remedy it. *See* 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"). However, a good reason can provide a valid excuse for not following prescribed treatment, such as that a treating family physician does not recommend the treatment, or that it is excessively painful or dangerous. 20 C.F.R. § 404.1530; SSR 16-3p, 2016 SSR LEXIS 4 at *24 ("An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms; An individual may not be able to afford treatment and may not have access to free or low-cost medical services").

According to Social Security Ruling, (hereinafter "SSR"), SSR 16-3p, the Administration will not find a claimant's symptoms are inconsistent with the evidence in the record on the basis that the frequency or extent of treatment sought by an individual is not comparable with the degree of the alleged limitations "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." 2016 SSR LEXIS 4 at*23, 2016 WL 1119029. This Ruling suggests that a claimant's failure to take prescribed medication is not a legitimate basis for rejecting the opinion from an examining doctor if there is a good reason for the failure to take the prescribed medication. *See id*.

In addition to taking hormones related to transgender treatment, the plaintiff had tried at least nine psychotropic medications while working with doctors to find the best medications. AR. 385 and 423. These medications seemed to have less than complete efficacy. After Dr. Czysz's evaluation, the plaintiff reported "during periods of anger/frustration she throws her possessions around." AR. 391. In August of 2013, the plaintiff expressed a desire to get *on* a

1  drug rather than off it in order to play video games, indicating a pattern of plaintiff referencing

2  video games as a way to express and understand the effect of her medications. AR. 394. In

3  October of 2013, plaintiff reported cutting herself. AR. 400. In November of 2013, her physician

4  recommended "trial of a medication that may help . . . depression and also encourage appetite

5  and weight gain." AR. 445. The same month, plaintiff expressed "concerns about the number of

6  pills a day, 13 pills a day, doesn't want to be reliant on meds." AR. 448. In December 2014, after

7  a discussion with her physician, the plaintiff elected not to start a medication recommended to

8  treat her bipolar disorder. AR. 451. In January of 2014, plaintiff told a doctor "medication

9  [treating depression] *may* be helpful, but it is hard to take it because it strongly impacts my

10  critical decision making." AR. 404 and 438 (emphasis added). That same month, plaintiff "acted

11  somewhat inappropriately with this examiner." AR. 407 (statement of clinical psychologist Dr.

12  Rindee Ashcraft, PhD). In March of 2014, plaintiff had a "depressed affect" and cuts on her left

13  forearm requiring bandages. AR. 464-65. The next month, plaintiff was not taking prescribed

14  Adderall due to "not currently being engaged in an activity that requires focused attention but

15  plans to restart it when she is again engaged in such activities." AR. 469. In May of 2015,

16  emergency personnel responded to treat a stab wound on plaintiff's hand. AR. 553-56. Plaintiff

17  told the ambulance crew she "was flipping out because of [her] life not being the way [s]he

18  wants." AR. 563.

19        Thus, the record demonstrates considerably more depth and complexity to plaintiff's

20  ongoing prescription drug treatment than the ALJ relied upon in his decision. The ALJ's

21  treatment of the record suggests improper "cherry-picking" of aspects of the record that support

22  the ALJ's decision, while failing to develop the record on aspects that support a finding of

23  disabling limitations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ

24

improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment") (citations omitted); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("by cherry-picking Dr. Mahmood's file to locate a single treatment note that purportedly undermines her overall assessment of [the claimant's] functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness") (collecting cases) (citations omitted). Thus, the ALJ's conclusion that plaintiff's symptoms improved with medication, although sometimes true, does not amount to a specific and legitimate reason for rejecting Dr. Czysz's opinion.

<u>Doctor Relied Heavily on Plaintiff's Subjective Complaints</u>

The ALJ found that "Dr. Czysz's opinion also relies heavily on the claimant's subjective claims but the cognitive findings do not correlate with the claimant's report." AR. 27. Turning to lack of correlation first, the ALJ points to the WMS-IV as evidence of plaintiff's memory being in the normal range. *Id.* While largely normal, the percentile ranks on the WMS-IV were all at 50% or below. AR. 318 (noting percentile ranks of 32, 50, 21, 45, and 32, as well as a lower average visual working memory). This is hardly a lack of correlation with plaintiff's self-reporting, particularly given the first sentence of the WMS-IV result: "The following WMS-IV score report is not intended as a stand-alone document and should only be interpreted in the context of the full DSHS assessment to which it is attached as an addendum." AR. 318. Also notably, plaintiff was tired and hungry during the examination, getting up during its administration to get food. *Id.* The ALJ erred in justifying assigning little weight to Dr. Czysz's opinion because of the attached WMS-IV report. *Id.*

Additionally, the Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*Id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

In addition, the Ninth Circuit noted the following in an unpublished decision:

> Moreover, mental health professionals frequently rely on the combination of their observations and the patient's report of symptoms (as do all doctors); indeed the examining psychologist's report credited by the ALJ also relies on those methods. To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders.

1  *Ferrrando v. Comm'r of SSA*, 449 Fed. Appx. 610, 612 n2 (9th Cir. 2011) (unpublished

2  memorandum opinion). Dr. Czysz is a clinical psychologist conducting an MSE in a clinical

3  setting.

4        Therefore, the ALJ's conclusion that Dr. Czysz's opinion was based on claimant's

5  subjective claims and that his cognitive findings did not correlate with the claimant's report is

6  not supported by substantial evidence in the record.

7        <u>Marked Cognitive and Social Limitations</u>

8        The ALJ pointed to plaintiff's activities of daily living while dismissing Dr. Czysz's

9  marked limitations with respect to cognitive functioning. *See* AR. 27. Dr. Czysz opined that

10 plaintiff had marked limitations in five categories of basic work activity: (1) understand,

11 remember, and persist in tasks by following detailed instructions, (2) perform activities within a

12 schedule, maintain regular attendance, and be punctual within customary tolerances without

13 special supervision, (3) communicate and perform effectively in a work setting, (4) complete a

14 normal work day and work week without interruptions from psychologically based symptoms,

15 and (5) maintain appropriate behavior in a work setting. AR 315. The ALJ decided that the

16 marked limitations reported by Dr. Czysz "are not supported." *Id.* As proof of his position, the

17 ALJ brought up plaintiff's having weekly social gatherings with friends, playing online social

18 games, and going to the bar on Saturdays with her friends to host an event. *Id.*

19       Here, the ALJ did not address how online social games or weekly gatherings with friends

20 are skills directly transferable to work or how they contradict Dr. Czysz's opinion. AR. 27.

21 Further, the record indicates concerns that plaintiff "does not interact with other residents,

22 unclear if she has any close friends." AR. 477. Therefore, the Court concludes that the finding by

23

24

1  the ALJ that Dr. Czysz's opinion is inconsistent with plaintiff's activities of daily living is not
2  based on substantial evidence in the record as a whole.
3    Furthermore, the marked limitations opined by Dr. Czysz are in fact supported. For
4  instance, the opinion the plaintiff would have attendance problems is supported directly by Dr.
5  Czysz in his MSE. *See* AR. 314. (Indicating plaintiff "becomes obsessed with video games,
6  cannot go to work). The marked limitation that the plaintiff cannot "remember tasks" is
7  supported in the record. Dr. Sarah Rogers, MD opined the plaintiff "Seems to have significant
8  memory impairment." AR. 375. (*See also* AR.316) (Dr. Czysz's MSE opining that "memory was
9  somewhat impaired). And, the marked limitations that the plaintiff could not "perform
10 effectively in a work setting" or "maintain appropriate behavior in a work setting" are directly
11 supported by Dr. Czysz's MSE. *See* AR. 313 (opining that "H[er] inconsistent sense of self, self-
12 mutilation, volatile mood, etc., would interfere with h[er] capacity to interact with others."); *see*
13 *also* AR. 314 (noting that "she becomes enraged in response to interpersonal events" and "It is
14 difficult for this client to down-regulate negative affect and to interact with others in a consistent,
15 appropriate, and predictable manner").  Therefore, the ALJ's rejection of Dr. Czysz's opinion
16 regarding plaintiff's marked limitations is not supported by substantial evidence in the record.
17    Check-box Format
18    The ALJ further justified giving little weight to Dr. Czysz's opinion because of the check
19 box format of the form. AR. 27. Discrediting a doctor's opinion simply because she used a
20 check box form is not valid unless that opinion is inconsistent with the underlying clinical
21 records. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) ("the ALJ was
22 [not] entitled to reject [medical] opinions on the ground that they were reflected in mere
23 check-box forms" where the "check-box forms did not stand alone" but instead "reflected
24

and were entirely consistent with the hundreds of pages of treatment notes"); *see also Neff v. Colvin*, 639 F. App'x 459 (9th Cir. 2016) (unpublished); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (unpublished).

The ALJ found that the indicated limitations are not transcribed into "function-by-function" limitations. *Id.* In fact, the form used by the doctor is a standard Washington Department of Social & Health Services Psychological/Psychiatric Evaluation. WA DSHS Form 13-865. The limitations on that section of the form are separated into 13 discrete categories. *Id.* Here, Dr. Czysz's narrative portion of the MSE corresponds with the check-box portion of the form, presenting no substantial inconsistencies. *See* AR. 312-317. Thus, the ALJ committed legal error to the extent he discounted Dr. Czysz's opinion because he used a check box form, particularly where, as here, Dr. Czysz's opinion was accompanied by a clinical interview and mental status examination.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 2015 U.S. App. LEXIS 11920 at *7-*8 (9th Cir. July 10, 2015) (*citing Stout,* 454 F.3d at 1055-56).

Here, the RFC was less limited than it would have been had Dr. Czysz's opinion been weighed more heavily. *See* AR. 29-30. The marked limitations included by the doctor, touching

on such essential work functions as proper attendance and persisting in the completion of tasks, were not included in the testimony of vocational expert Todd Gendreau. *See* AR. 32-41. This is because the ALJ did not question the vocational expert about available work accommodating these limitations. *Id.* This exclusion is significant because a marked limitation is defined as "a very significant limitation on the ability to perform one or more basic work activity." AR. 314. With this significant limitation left unconsidered, the court cannot confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *See Marsh v. Colvin*, 792 F.3d 1170. Had Dr. Czyz's opinion been properly evaluated it may have changed the ALJ's nondisability determination. This error is therefore not harmless.

       (2)    **Whether the ALJ erred when he failed to address plaintiff's listing level weight; and whether remand is necessary so that the ALJ may consider evidence submitted to the Appeals Council.**

Because the Court has already determined the ALJ erred when considering the medical evidence, further review of these issues is not necessary and on remand the ALJ should reconsider all of the evidence relevant to these findings. For example, plaintiff argues that her impairments equal a Listed Impairment regarding her underweight status, Listing 5.08, an issue not evaluated by the ALJ in the first instance. *See* AR. 23-25 (ALJ Finding: "The claimant has been noted as being underweight but there is not a diagnosis that has been associated with the claimant's weight loss. Thus underweight is not a medically determinable condition." (internal reference omitted); *see also* Dkt. 11, pp 4-6.). The ALJ did not consider the equivalency of plaintiff's combined mental impairments with Listing 5.08.

At step-three of the administrative process, if the administration finds that the claimant has an impairment(s) that has lasted or can be expected to last for not less than

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 16

twelve months and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment, the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d).  The claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), *as modified to render a published opinion by* 2005 U.S. App. LEXIS 3756 (9th Cir. 2005).

"An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.* (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *Marcia v. Sullivan,* 900 F.2d 172 (9th Cir. 1990)).

However, such a finding could lead to a determination of the ultimate issue of disability, but it is best left to the ALJ in the first instance. The ALJ should explicitly address this Listing following remand of this matter.

## CONCLUSION

The ALJ did not properly weigh the medical evidence, particularly the MSE completed by Dr. Czysz. The Court concludes that crediting fully Dr. Czysz's opinion could have affected the ultimate determination regarding disability, and, therefore, was not harmless error.

Based on this reason, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to

1  the Acting Commissioner for further proceedings consistent with this Report and

2  Recommendation.  **JUDGMENT** should be for **plaintiff** and the case should be closed.

3  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

5  6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

6  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7  imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 18,**

8  **2017**, as noted in the caption.

9  Dated this 18th day of July, 2017.

J. Richard Creatura
United States Magistrate Judge